Whitaeek, Judge,
delivered the opinion of the court:
Plaintiff entered into a contract with the United States Corps of Engineers of the Department of the Army of the United States for the construction of a dam on the Fall River, Greenwood County, Kansas, for the sum of $6,107,-053.90. The contract was fully performed and the plaintiff has been paid the contract price. It sues for excess costs which it incurred as a result of an alleged misrepresentation by the Government. These excess costs were incurred in constructing a power line about sixteen miles long in order to secure from the Kansas Electric Power Company the power required in performing the contract. The total cost of constructing this line was $32,349.85, for which amount plaintiff sues. It alleges that the defendant represented that *820 the power company would deliver adequate power to the site without cost to it.
Paragraph SC-14 of the specifications, which were attached to the invitation for bids, required that the contractor should furnish all necessary electricity at no expense to the Government, but in subparagraph (b) it was stated:
The Kansas Electric Power Company of Lawrence, Kansas, has stated that electric power (three-phase, 60-cycle, alternating current at 7,200/12,470 volts wye) can be made available to the contractor at the site of the work at the metering point indicated on the drawings. * * * The power company will furnish and install metering equipment at the metering point indicated on the drawings. The contractor will be required to provide his own local distribution system and transformation equipment.
Furthermore, drawing C112-61.1, attached to the invitation for bids, designated a point on the site of the work as “metering pole to be installed by others,” and it indicated a line to this metering pole which it designated as “incoming power supply to be installed by others.”
In accordance with the requirement of paragraph GC-2 of the specifications, requiring plaintiff to make an investigation of the site and local conditions, including the availability of electric power, the contractor sent its representative to see the Kansas Electric Power Company to confirm the representation made in the specifications and the drawings that electric power would be available at the site of the work. Plaintiff’s representative was told that it would be.
However, it developed that the defendant in its inquiry to the Kansas Electric Power Company about the availability of power had stated that it had estimated that the contractor would need about 200 kilowatts for both lighting and power, and the power company’s statement that power would be available at the site was based upon this estimate.
Defendant did not advise plaintiff that it had so estimated its need for power, nor that it had advised the power company of this estimate; hence, plaintiff was misled by defendant’s statement in its specifications, that the Kansas Electric Power Company had stated that electric power would be “available to the contractor at the site of the work at the *821 metering point indicated on the drawings,” and the statements on the drawings. It naturally understood these statements to mean that adequate current would be available. This understanding was confirmed by the statement of the Kansas Electric Power Company.
Plaintiff understood that it would not have to run any outside line to get this power, because the specifications said the power company would furnish and install the metering equipment at the metering point shown on the drawings, and because, further, the drawings expressly stated, “Incoming power supply to be installed by others” and “Metering pole to be installed by others,” and, lastly, the specifications said the contractor would have to provide its own local distribution system, thus impliedly stating that any outside lines necessary to bring the power to the metering point would be run by the power company.
Not only was this a reasonable assumption from the representation made by the defendant and the confirmation of it by the Kansas Electric Power Company, but, in addition, plaintiff’s survey of the site disclosed that there were two electric power lines in the immediate vicinity of the dam site. One of these was a high tension line located almost directly over the dam site, and the other was a local power line terminating about two miles from the dam site. It developed that existing demands on the local line were so great that the power company could not furnish plaintiff more than 200 kilowatts from this line, and for some reason or other the high tension line was not available at all to furnish power to the site; but the existence of these two lines in close proximity to the dam site, the representations of the defendant, and the confirmation thereof by the power company naturally misled plaintiff into believing that it would not have to incur any cost for transporting power to the site.
However, when the plaintiff informed the power company that it would need not only 200 kilowatts but perhaps as much as 1250 kilowatts, the power company advised it that power to this extent was not available at the site and that, in order to secure this much power, it would be necessary to construct a power line of about 16 miles in length. This the plaintiff was forced to do.
*822 Plaintiff had not included the cost of running this power line in its estimate, having been led by the defendant to believe that no such cost would have to be incurred.
Plaintiff asked the contracting officer to pay for the cost of running this line, but its request was refused. Plaintiff appealed under article 15 of the contract, but its appeal was denied by the Claims and Appeals Board, whose decision was affirmed by the Chief of Engineers.
Defendant says that plaintiff is not entitled to recover because of the provisions of paragraph GC-2 of the specifications requiring the contractor to investigate the site, including the availability of electric power. However, the rule is well established that where the Government makes positive statements in the specifications or drawings for the guidance of bidders, that a contractor has a right to rely on them regardless of contractual provisions requiring the contractor to make investigations. Hollerbach v. United States, 233 U. S. 165, 172; United States v. Atlantic Dredging Co., 253 U. S. 1, 11; Potashnick v. United States, 123 C. Cls. 197, 218; Binghamton Construction Co. v. United States, 123 C. Cls., 804, 836-837.
We are, therefore, of the opinion that plaintiff is entitled to recover of the defendant the amount it cost plaintiff to construct the line the defendant had led it to believe it would not have to construct.
Judgment will be rendered in favor of plaintiff and against defendant for the sum of $32,349.85.
Howell, Judge; Madden, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OP PACT
The court makes findings of fact, based upon the evidence, the report of Commissioner Marion T. Bennett, and the briefs and argument of counsel, as follows:
1. The plaintiff, Arcóle Midwest Corporation, is a corporation duly organized and existing under the laws of the State of Illinois.
2. On or about March 12,1946, the defendant, through the Corps of Engineers of the Department of the Army, issued *823 an invitation for bids for the construction of a dam on the Fall River, Greenwood County, Kansas. The invitation called for bids predicated upon the terms, conditions, representations, specifications and drawings comprising a written form of contract prepared and presented by the defendant in connection with the invitation.
3. The plaintiff submitted its bid in writing to the defendant in the sum of $6,107,053.90. Together with its bid the plaintiff submitted, pursuant to Paragraph SC-16 of the contract, a list of equipment which the plaintiff agreed would constitute the “minimum plant to be used on the work” in the event it was awarded the contract. The latter was made a part of the contract. The schedule of equipment to be used listed the name, kind, capacity and condition of the equipment but carried no indication as to the source of its operating power. The evidence establishes, however, that the specified “Johnson batching plant” was exclusively an electrically operated mechanism requiring approximately 360 kilowatts of electricity to run it. The plaintiff planned and did use electric motors for the cableway, pumps, wells and also in the quarry. This gave the plaintiff a connected load of about 2,000 horsepower or between fifteen and sixteen hundred kilowatts demanding at any one time a maximum of 1250 kilowatts. This machinery, with the exception of the specified batching plant, could have been operated by other types of motors. However, in 1946 it was good industry' practice to use electricity where available.
4. The bid submitted by the plaintiff was the lowest. On April 26, 1946, the plaintiff and the defendant, represented by the Corps of Engineers of the Department of the Army, entered into Contract No. W-34r-066-eng.-479 for the construction of the so-called Fall River Dam on the Fall River, Greenwood County, Kansas. The contract was, in all respects, pertinent to the present claim, except for the addition of the schedule of “minimum plant to be used on the work,” identical in content with the contract form prepared and presented by the defendant upon the basis of which the invitation for bids was issued and upon which plaintiff’s bid had been determined and submitted.
*824 5. The plaintiff constructed the dam as provided in the contract. The defendant accepted the work and paid the contract price.
6. Prior to issuance of the invitation for bids and in the course of preparing the specifications for this contract, the defendant, by letter dated January 29, 1946, communicated with the Kansas Electric Power Company, Lawrence, Kansas, requesting information regarding the company’s ability to supply electric power for use at the project from facilities in the vicinity. In securing this information the defendant estimated that the maximum power demand for construction purposes, including both motor and lighting load would be 200 kilowatts.
7. The defendant received a reply from Kansas Electric Power Company dated February 9, 1946, in which the company stated, in effect, that it was in a position to supply the indicated amount of 200 kilowatts of electric power to the proposed dam site and attached a sketch showing the location of the incoming line and the proposed extension to the dam site, as designated on defendant’s drawing No. C-112-611.1. The letter also stated that with the understanding that the metering point would be as designated on the drawing, or reasonably close thereto, there would be no connection charge. The company set forth the voltage of its incoming line. This information was incorporated into the contract specifications, as shown in the next finding.
8. Paragraph SC-14 of the contract specifications read as follows:
SC-14. Electricity and Gas.
(a) General. — All electricity and gas required for the contractor’s own use, and for the Government’s use in its construction buildings or elsewhere, shall be furnished by the contractor at no expense to the Government during the life of this contract. All temporary connections for electricity and gas shall be subject to the approval of the contracting officer. All temporary lines, including those providing electrical power to the Government construction buildings, shall be furnished, installed, connected, and maintained by the contractor in a workmanlike manner satisfactory to the contracting officer, and upon completion and acceptance of the work to be performed under this contract, shall be re *825 moved, except for those lines serving Government construction buildings, which shall remain in place and become the property of the Government, as indicated on the drawings.
(b) Electricity. — The Kansas Electric Power Company of Lawrence, Kansas, has stated that electric power (three-phase, 60-cycle alternating current at 7,200/12,470 volts wye) can be made available to the contractor at the site of the work at the metering point indicated on the drawings. The contractor would be charged for the electric power at the applicable rates designated in the Kansas Electric Power Company rate schedule LP-45, copies of which should be secured from the company’s general office, Lawrence, Kansas. The power company will furnish and install metering equipment at the metering point indicated on the drawings. The contractor will be required to provide his own local distribution system and transformation equipment.
The parenthetical reference in the above quote has reference to the quality and not to the quantity of electric power.
The drawings attached to the invitation for bids, and filed as plaintiff’s exhibit No. 1 on sheet C1Í2-61.1, shows a point on the area of the work which they designte as “Metering pole to be installed by others.” They also indicate a power line and designate it as “Incoming power supply to be installed by others.”
9. The defendant did not reveal to the plaintiff in the foregoing quoted Section SC-14 (b), nor in any other manner, that, in making inquiry of the Kansas Electric Power Company as to the availability of electric power at the site of the project, it had based its inquiry on its estimate of the approximate maximum quantity requirements of electrical current for use during the construction of the dam.
10. The plaintiff understood the above-quoted section of the contract to mean that it would not be required to erect, furnish or pay for any electrical power lines to the dam site and that an adequate supply of electrical power would be available at the dam site to the metering point indicated on the drawing which comprised a part of the contract. The plaintiff also understood that the power company would furnish an adequate supply of electrical power for use during the construction of the dam through its facilities to the metering point indicated on the drawing and would furnish *826 and install metering equipment at the metering point indicated on tbe drawing and that it would only be required to provide its own local distribution system and transformation equipment from the metering point indicated on the drawing and to pay for the electrical current consumed by it at the applicable rates. The plaintiff, both in preparing its estimate of the cost of performing under the contract and in submitting its bid to the defendant, made no allowance for the cost of providing power lines to the dam site.
11. Paragraph GC-2 of the contract specifications read as follows:
GC-2. Site Investigation and Representations. — The Contractor acknowledges that he has satisfied himself as to the nature and location of the work, the general and local conditions, particularly those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads and uncertainties of weather, river stages, tides, or similar physical conditions at the site, the conformation and condition of the ground, the character, quality and quantity of surface and subsurface materials to be encountered, the character of equipment and facilities needed preliminary to' and during the prosecution of the work and all other matters which can in any way affect the work or the cost thereof under this contract. Any failure by the Contractor to acquaint himself with all the available information concerning these conditions will not relieve him from responsibility for estimating properly the difficulty or cost of successfully performing the work. The Government assumes no responsibility for any understanding or representations made by any of its officers or agents during or prior to the negotiation and execution of this contract, unless (1) such understanding or representations are expressly stated in the contract and (2) the contract expressly provides that responsibility therefor is assumed by the Government. Eepresentations made but not so expressly stated and for which liability is not expressly assumed by the Government in the contract shall be deemed only for the information of the Contractor and the Government will not be liable or responsible therefor.
12. Prior to submitting its bid to the defendant, the plaintiff conducted a site investigation in accordance with Section GC-2 which revealed that there were two electric power lines in the vicinity of the dam site, each of which was suitable *827 in nature for furnishing electrical power to the dam site in accordance with the representations of the above-quoted Section SC-14 (b) of the contract. One of these was a high-power tension line located almost directly over the dam site and the other was a local power line terminating about two miles from the dam site. Either of these power lines was, in fact, capable of delivering the quantity of power required by the plaintiff in the construction of the dam. However, the Kansas Electric Power Company advised the plaintiff, subsequent to the time when the plaintiff and defendant entered into their contract, that the high-power tension line was not available and that there were too many local demands on the other power line for it also to supply the plaintiff with its requirements.
13. Prior to submitting its bid to the defendant, the plaintiff sent its general superintendent to the Eureka, Kansas, office of the Kansas Electric Power Company to inquire whether the company was prepared to furnish electric power to the dam site, as represented by the defendant in Section SC-14 (b) of the contract. The plaintiff was thereupon advised by the power company that such facilities would be available. The power company gave no indication to the plaintiff that such availability was predicated on the defendant’s maximum estimate of 200 kilowatts. The plaintiff’s representative told the power company nothing about what its real requirements for electricity would be if the plaintiff were awarded the contract, nor was any inquiry made by the utility on this question.
14. Subsequent to entering into the contract with the defendant, the plaintiff again communicated with the Kansas Electric Power Company to arrange for the supply of electrical power required by it in connection with the construction of the dam. The plaintiff then learned for the first time that the defendant in its inquiry to the power company had stated that it estimated that no more than 200 kilowatts of electricity would be required for all purposes at the dam site during the construction of the dam, and that the power company’s advice that power would be available at the sita was based upon this estimate. The power company further advised the plaintiff that since the actual maximum *828 power requirements (1,250 kw) of plaintiff at the dam site during the construction of the dam would be greater than 200 kilowatts, it would be necessary to construct a new power line about sixteen miles long in order to provide an adequate quantity of electrical power to the dam site and that the plaintiff would be required to pay the cost of constructing such power line.
15. By an agreement effective June 7, 1946, the plaintiff contracted with the Kansas Electric Power Company for the construction of the additional power line in order to obtain the quantity of power the plaintiff needed to operate its equipment. The contract provided that the electric energy to be delivered would be a three-phase, 60-cycle, alternating current of a nominal voltage of 7,200/12,470 wye volts at the point of delivery and in the amount of approximately 800 kilowatts. The line was established and the plaintiff, in accordance with its agreement, paid the utility company a total sum of $32,349.85, which sum the plaintiff claims in this suit.
16. By letter of July 11, 1946, the plaintiff advised the District Engineer, Tulsa District, who was the contracting officer, that it would be necessary to construct lines and a substation in order to obtain sufficient electricity and inquired as to whether the Government would negotiate the matter with the Kansas Electric Power Company or if the plaintiff should pay for the installation and be compensated therefor by a change order to the contract.
17. The District Engineer replied by letter dated August 5, 1946, through the Resident Engineer, that the specifications stated that electric power of certain characteristics could be made available but did not recite that this would be done without cost to the contractor and did not mention what quantity would be available. The District Engineer further advised the plaintiff that at the time the specifications were written the power demand of each contractor submitting a bid was not known, such being dependent upon the particular type of equipment that might be utilized, and it was assumed that each bidder would check the source of supply prior to making any commitments. Paragraph GC-2 of the contract specifications, entitled “Site Investigation *829 and Representations” was cited. The District Engineer also cited paragraph SC-14 (a) of the specifications stating that it would be the plaintiff’s responsibility to take care of furnishing electric power to the project during the construction stage. The District Engineer, therefore, on October 7,1946, denied plaintiff’s claim and advised it of its right to appeal to the head of the department.
18. By letter dated September 5, 1946, the plaintiff again wrote to the contracting officer reiterating its position that it had been misled by the representations in the specifications, but that to avoid delay in the prosecution of the work under the contract the plaintiff had entered into a contract with the Kansas Electric Power Company for the construction of the necessary electric power supply lines and asking that the defendant assume responsibility for the cost thereof.
19. The plaintiff did appeal to the Chief of Engineers, United States Army, through the District Engineer, Tulsa District, by letter dated October 28, 1946. The appeal was denied by the Corps of Engineers Claims and Appeals Board in its decision No. 33 dated April 4,1949. The Board’s action was affirmed by the Chief of Engineers, United States Army, on April 6,1949. The principal reasons given for dismissing the plaintiff’s claim were as follows:
(1) Under the terms of the contract, the plaintiff was required to furnish the materials and perform the work for the construction of the Fall River Dam. Subsection (a) of Paragraph SC-14 made it the contractor’s responsibility to furnish electricity and gas during the construction at no expense to the Government.
(2) Subsection (b) of Paragraph SC-14 did not relieve the plaintiff of the responsibility of making its own investigation of the actual power situation.
(3) The absence of a provision such as the one contained in Paragraph SC-13 (b), relating to the contractor’s responsibility for an adequate supply of water, from Paragraph SC-14 (b) relating to electric power did not relieve the plaintiff of responsibility under Paragraph SC-14 (a).
(4) Had the plaintiff made the investigation required by the general conditions of the specifications prior to submitting its bid, it would have discovered that the then existing *830 power facilities of the Kansas Electric Power Company were inadequate to supply the amount of power it contemplated using.
20. Final payment under the contract was made by the defendant on September 0, 1949, based on the voucher prepared by the plaintiff on August 81, 1949, described as “Payment No. 39 and Final.” The plaintiff requested and received this final payment in an amount of $17,579.08 without reservation or protest. Similar vouchers and estimates were prepared by the defendant and signed by the plaintiff on many previous occasions, in each case similar in form and in each case, as with Estimate No. 39, limited to specified items of work under the contract during a stated period of time. Nothing was said to the plaintiff by the defendant in connection with the preparation and submission of the final voucher and estimate, or in connection with its payment, to the effect that such payment was regarded or intended by the defendant as a settlement of the plaintiff’s claim for reimbursement with respect to the cost of constructing the power line and there is no corroborative evidence that it was so intended by either the plaintiff or defendant.
Nowhere on either the voucher or the estimate is there any statement that it covers or is intended to include reimbursement to the plaintiff for, or compromise of the plaintiff’s claim with respect to, the cost of the power line. No release has ever been executed by the plaintiff purporting to discharge the defendant with respect to the present claim, even though under the provisions of article 16 of the contract the Government could have required plaintiff to furnish such a release and to specify therein any claims excepted therefrom.
CONCLUSION 03? LAW
Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law plaintiff is entitled to recover, and it is adjudged and ordered that it recover of and from the United States thirty-two thousand three hundred forty-nine dollars and eighty-five cents ($32,349.85).