Thomas PASKVAN, Appellant,

v.

Pete MESICH, an incompetent person, by his Guardian, Blazo N. Bigovich, Appellee.

No. 14149.

United States Court of Appeals Ninth Circuit.

June 14, 1955.

Rehearing Denied Sept. 26, 1955.

Collins & Clasby, Walter Sczudlo, Fairbanks, Alaska, for appellant.

Julien A. Hurley, Warren A. Taylor, Fairbanks, Alaska, for appellee.

Before HEALY, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Pete Mesich was adjudged incompetent by the Probate Court of Alaska April 9, 1951. By his appointed guardian, Blazo N. Bigovich, he then brought suit against Thomas Paskvan. The basis of the claim was that plaintiff became incompetent as a result of injury, and defendant Paskvan, by undue influence and fraud, had obtained property and other advantages from plaintiff. Plaintiff prayed for various types of relief

which, however, were all connected with the transactions above mentioned. Included therein were vacation of a satisfaction of judgment, cancellation of a deed and partnership agreement, reconveyance of certain property, declaration of trust as to other realty, that plaintiff be held not to be obligated on certain notes and mortgages, that plaintiff have judgment for certain sums, and that defendant account.

Defendant pleaded generally that, although Mesich was found incompetent in 1951, for all the years prior to April of that year, the latter was in possession of his faculties and competent; that, while he did not understand English completely, he could understand Croatian, in which language he often conversed with defendant; that the transactions were in good faith, for valuable consideration, and were fully understood by Mesich. As to certain mining claims which plaintiff demanded be held in trust, defendant said that he foreclosed them in his own name and bought them in, but that he had never claimed to own them and was willing to reconvey.

The court found that Mesich received serious injuries about the head in 1942, and since that time he has been and is now mentally incompetent to attend to his business affairs.

The court further found that defendant, knowing of the incompetence and disabilities of Mesich, ingratiated himself into the confidence of plaintiff, fraudulently took advantage of the mental and physical infirmities of plaintiff and thereby accomplished the acts with which he was charged. The greater part of the argument of defendant challenges the findings of the trial judge. A recital of certain evidence sets these findings out with clarity. Although before the injury to Mesich the parties were generally friendly, they had had a serious quarrel which resulted in a lawsuit in which Mesich recovered a judgment against Paskvan in Cause No. 4643, dated April 8, 1941. There it was adjudged that Paskvan held legal title to Lot 3 in Block 1 of the North Addition to Fairbanks Townsite, Fairbanks, Alaska, whereon the International Hotel was situate, together with the building situate thereon and all personal property contained therein, a note and mortgage upon certain mining claims given by Milo Saulich, cash deposits for liquor licenses, insurance on the properties, accounts of patrons due the International Hotel. Deed and bill of sale were ordered delivered therefor by Paskvan, and further judgment was given for $7,535.01. After the head injury, Paskvan seems to have gained ascendancy over Mesich when the latter was seriously ill. Paskvan took Mesich into his home, and he was nursed by Mrs. Paskvan for several months.

The younger Paskvan seems to have bridged the gap between his father and Mesich. He entered a partnership with plaintiff in the operation of the Arctic Hotel and obtained a power of attorney. From the proceeds of the business, he turned over to his father between June 5, 1948, and October 22, 1949, certain sums of money. This was brought out on the cross-examination of Paskvan, Jr., and the admission of the evidence is questioned here. Obviously, it was properly admissible. It tended to show the interest of the witness. His explanation of the transaction was also given. Defendant objected to a question asked of Thomas Paskvan, Jr., on cross-examination as to how long he had held a power of attorney from Mesich, which elicited the answer, "A year and a half, approximately," from June, 1947. This cross-examination was proper to show interest in an adverse witness and also to develop that the power of attorney to Paskvan, Jr., was dropped at his request when Thomas Paskvan, Sr., defendant, whose relations with Mesich had been strained after the lawsuit, succeeded in obtaining in his own name a power of attorney from the latter. Far from being inadmissible, this testimony was highly important, since the circumstances tend to connect the dealings of plaintiff and defendant and explain the change from hostility by Mesich to that

of utter reliance upon the directions of defendant.

■ Thereafter, Paskvan insisted upon and obtained in 1948 or 1949 a satisfaction of the judgment entered April 8, 1941, in Cause No. 4643, from Mesich. The trial court found this satisfaction of judgment was obtained by fraud and without consideration. The finding is supported by substantial evidence.

Paskvan testified:

"Q. And did you pay him anything to satisfy that? A. I didn't pay him a nickel. No."

Another closely connected incident which characterizes the entire situation is that of the foreclosure and sale of the mining claims under mortgage as above noted given by Milo Saulich. The court, in the judgment upon which satisfaction was noted by Mesich, had decreed that the note and mortgage were held in trust by Paskvan. However, and apparently prior to the satisfaction of the judgment, the latter foreclosed in his own name, and, upon default and sale under foreclosure decree, bid in the mortgaged property under his own name, using the decreed note as consideration. Paskvan admits that in this whole transaction he acted as fiduciary. His only defense is that Mesich had not asked him to reconvey the mining claims.

From these two transactions which occurred before or about the time of the conveyance of the lot and the so-called "partnership" agreement, the court properly found that all the subsequent transactions were tainted with fraud and breach of trust. Among these, the court found:

1. On June 27, 1949, after the entry of the satisfaction of judgment, defendant induced plaintiff to execute a deed for an undivided one-half interest in the International Hotel property in Fairbanks; that there was no consideration for the deed; defendant, representing it as a mere matter of form, refused to allow plaintiff to have the deed read to him by a lawyer. It will be noted this was half of the real property which Paskvan had been ordered to reconvey to Mesich by the judgment of April 8, 1941.

2. On June 27, 1949, defendant induced plaintiff to execute a partnership agreement for the purpose of securing possession and control of the real property, of which half had been deeded to him, and the business to be conducted thereon. Defendant refused to abide by the terms of the agreement and, with intent to defraud, converted large sums to his own use and attempted to increase his capital contribution by a false claim of services rendered at excessive compensation, made false statements in writing regarding the financial condition of the business, minimized the value of the real property and used the funds derived from the hotel and bar for his own use.

The other transactions were similar. The trial court found complete lack of consideration by Paskvan for any of the transfers, agreements and other dealings. These findings of fact are clearly supported by the evidence. The evidence upon which these were based was controverted only by testimony of Paskvan, Sr., and Paskvan, Jr., which was colored by interest and did not have support of circumstantial guarantees of verity.

■ The finding as to the mental incapacity and business incompetence of Mesich at the time of the transaction was amply supported by the evidence. One physician gave an opinion that, from date of injury, Mesich was mentally incompetent to carry on his business, and another held the opinion that undoubtedly his incompetency started at the time of his injury. Several lay witnesses testified that they considered him incompetent from that date. A question is raised as to the admission of such testimony but it is indubitably relevant and material. It was also competent. There was no testimony, either lay or expert, to the contrary. Defendant points to a series of acts and transactions of Mesich to prove that he did act competently at times. But, of course, no inferences as to his general business capacity are dictated thereby. Paskvan testified that

Mesich understood what was transpiring and what he was doing. Defendant says: "Some days Pete, to tell the truth, is a little hazy, but again, when he wants to sit down and feels like it, he can talk just as good as any citizen sitting next to you if he likes you." Defendant and his son both testified that Mesich understood the transactions between defendant and himself and acted voluntarily. The doctrine of lucid intervals applicable in will cases has no effect here where conduct over a course of years is in question. There was substantial testimony to support the finding of the trial court.

■ Where it is established that the mind of a party to a transaction has been infirm or his comprehension weakened by age, accident or illness, the usual presumption of normality and capacity to contract is dissipated. The weakness of mind may not amount to absolute incapacity to transact any business at all and the mental infirmity need not have been established judicially in order to require the person who has received benefits from dealings with one so afflicted to prove that these were not affected thereby. If one does not have sufficient understanding to protect one's own interests and mental strength to compete in the market place, he lacks capacity to transact ordinary business, and dealings with him may be viewed with caution.

■ The evidence likewise supports the finding that, "knowing of the mental incompetence and disabilities, Paskvan ingratiated himself into the confidence of the plaintiff and, fraudulently taking advantage of plaintiff's mental and physical infirmities and incompetence," accomplished the results of which plaintiff complains. Mesich was about seventy years old. He was born in Austria (now Jugoslavia) and came to Alaska some fifty years ago. Paskvan was a fellow countryman of plaintiff. These two had known each other for many years in Alaska, had common tastes and interests, and both spoke the Croatian language. It is found that plaintiff is unable to read or write English or his native Croatian; that, since the injury, it is with extreme difficulty that he is able to understand matters read or related to him and he has relied upon his friends or purported friends for explanations. The eyesight of plaintiff was impaired by a rather unsuccessful operation in 1949 for cataract. He was quite hard of hearing.

■ In such a situation, other elements are given weight. If there is a close personal relationship between the parties, even though it does not approach a fiduciary character, a different atmosphere is created. Knowledge of the mental infirmity of another by one who receives a benefit is a circumstance which may convince the trier of fact that a course of conduct is demonstrative of fraud. But absence or gross inadequacy of consideration is a badge which may lead a court to circumstances which require transactions to be avoided or a trust in favor of the grantor to be imposed.

■ It is objected that certain evidence was admitted contradicting a stipulation. But it had been stipulated that, if defendant introduced evidence, it would be to a certain effect. Of course, such evidence was subject to contradiction.

■ Paskvan objects that an election was required and that a claim that the "partnership" agreement be set aside and disaffirmed as void is inconsistent with a claim of breach thereof and accounting, which is an affirmance. The rule that a litigant cannot affirm and disaffirm a contract at the same time is hornbook law. But here the whole impetus is to set aside the "partnership" agreement and obtain return of the funds and property appropriated by Paskvan thereunder. The fact that he did not live up to the stipulations of the agreement is evidence of his general plan to defraud which the court found. There was no inconsistency.

■ There is a contention that Mesich must have restored the status

quo and offered to pay for Paskvan's contributions of money, property and labor before he could sue. It may be said this is ordinarily the rule in cases of rescission or where imposition of a trust is sought. But this is a court of equity and the course of events has been such that any contributions of defendant have been clouded by the main purpose of defrauding plaintiff.

Affirmed.