**UNITED STATES of America,**
**Plaintiff,**

v.

**IDLEWILD PHARMACY, INC.,**
**Defendant.**

**Civ. A. No. 4740–A.**

United States District Court
E. D. Virginia,
Alexandria Division.

Oct. 14, 1969.

---

Jonathan U. Burdick, Atty., Dept. of Justice, Washington, D. C., Brian P. Geddings, U. S. Atty., Alexandria, Va., for plaintiff.

Stephen D. Potts, Washington, D. C., Roy B. Zimmerman, Alexandria, Va., for defendant.

## MEMORANDUM OPINION

KELLAM, District Judge.

On September 24, 1962, defendant, Idlewild Pharmacy, entered into a contract with the United States acting through the Federal Aviation Administration to operate a news, drug and novelty concession at Dulles International Airport for a period of five years ending December 31, 1967. The contract obligated

defendant to pay as rental for the use of the premises a percentage of the gross receipts from sales of the various articles with a minimum guaranteed annual rental. The sums of money are not in dispute.

The contract in question was the result of a bid submitted by defendant. The invitation to bidders [Plaintiff's Exhibit D] contained the following language:

Forecasts anticipate that passengers using Dulles International Airport will approach 1,200,000 in its first full year of operation, 1,800,000 during its second year and 2,100,000 in its third year. It is anticipated, with respect to aircraft movements, that approximately 40,000 aircraft operations will be realized during the first year and that this number will increase to 100,-000 by the year 1965.

Dulles International Airport is expected to be a prime tourist attraction. It is predicted, in this respect, that more than one million people will visit the Airport during its first full year of operation. Employment upon the Airport during its initial years of operation is estimated at 1,250 persons, and is expected to climb to an excess of 3,000 by 1965.

The foregoing is furnished for informational purposes only. Such data shall in no way operate to relieve the proponent from the responsibility of determining for itself the business potential.

The estimate of the number of passengers proved to be high. For 1963, the number of passengers at Dulles was only 64 percent of the estimate, and each year thereafter the percentage was even smaller.

Defendant also asserts that at the time of the making of the contract, jet planes were not permitted to land at Washington National Airport; that in 1966, the Federal Aviation Administration decided to permit two and three engine jets to land at Washington National, and such action further reduced the potential at Dulles.

Defendant did not pay the minimum required rental. During the early years of the lease, defendant made request of the lessor to change and/or amend the terms of the lease. Extensive negotiations were carried on between the parties. Amendments were made in the terms of the leases with some of the concessionaires at Dulles, and lessor offered to make the same amendment in the lease with defendant. Defendant refused.

Defendant says it relied on the estimate of the number of passengers expected at Dulles as set out in the invitation to bidders; that estimates by the Federal Aviation Administration of passengers expected at other airports has been rather conservative; that Federal Aviation has special knowledge in this area; and that a bidder is entitled to rely on such estimates. Hence, they say that the statements in the invitation to bidders are in fact representations; that they had a right to rely on them; that they were inaccurate; and that defendant did rely on them to its detriment.

In "determining the meaning and effect of contracts to which the United States is a party, the governing rules of law must be finally declared by this [United States Supreme Court] Court." S. R. A., Inc. v. Minnesota, 327 U.S. 558, 564, 66 S.Ct. 749, 754, 90 L.Ed. 851; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; Thompson v. United States, 268 F.2d 426 (4th Cir. 1959).

The line between what constitutes a representation and information is, at times, difficult to draw. The issue is not a new one. The following cases have held somewhat similar statements in invitations to bidders to be representations upon which bidders had a right to rely. United States v. Atlantic Dredging Co., 253 U.S. 1, 40 S.Ct. 423, 64 L.Ed. 735; Centex Construction Co. v. James, 374 F.2d 921 (8th Cir. 1967); Morrison-

Knudsen Company, Inc. v. United States, 397 F.2d 826, 184 Ct.Cl. 661 (1968); Womack v. United States, 389 F.2d 793, 182 Ct.Cl. 399 (1968); Fehlhaber Corporation v. United States, 151 F.Supp. 817, 138 Ct.Cl. 571 (1957); Arcole Midwest Corporation v. United States, 113 F.Supp. 278, 125 Ct.Cl. 818 (1953); Binghamton Construction Company, Inc. v. United States, 107 F.Supp. 712, 123 Ct.Cl. 804 (1952).

In Bell v. Lamborn, 2 F.2d 205, 206 (4th Cir. 1924), the Court said that one may be adjudged guilty of "fraud when he falsely expresses his opinion knowing that the facts are not what the opinion implies they are" if the other party is known to rely on the opinion. No such charge is made here, and if it were made, there is no evidence to support it. There are cases where matters of opinion are binding [37 Am.Jur.2d ¶ 46, 49 and 51, subject Contracts], but the evidence does not bring this case within those holdings.

But assuming for the sake of argument that the statements in question constitute misrepresentations of material facts, or were falsely or carelessly or recklessly made with intent to mislead —neither of which is supported by the evidence in this case—what remedies are available to defendant? Durham v. New Amsterdam Cas. Co., 208 F.2d 342, 344 (4th Cir. 1953), sets forth the choices open to one who complains of fraud and deceit:

The law is well settled that one who complains of fraud and deceit has the right either to rescind what was done as a result of the fraud and deceit, or to affirm what had been done and sue for damages caused by such fraud. He can choose either course, but he cannot choose both. The two are inconsistent. Robb v. Voss, 155 U.S. 13, 15 S.Ct. 4, 39 L.Ed. 52; United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261; Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 132 F.2d 887 [145 A.L.R. 612]; Intertype Corporation v. Pulver, D.C., 2 F.Supp. 4, affirmed,

5 Cir., 65 F.2d 419, certiorari denied, 290 U.S. 660, 54 S.Ct. 75, 78 L.Ed. 571.

A contract induced by fraud is not void, but voidable at the option of the party injured by the fraud. Upon its discovery, the innocent party has the option to rescind the contract, if he can restore what he has received in the same state or condition in which he received it, and sue for and recover back the consideration he has paid or given; or if he has not paid or given anything, he may repudiate the contract, and rely, when sued, on the fraud as a complete defense; or he may elect to retain what he has received under the contract, and bring an action to recover damages for the injuries he has sustained from the deceit. Durham v. New Amsterdam Cas. Co., supra; Brown v. Alkire, 295 F.2d 411 (10th Cir. 1961); General Finance Corp. v. Keystone Credit Corporation, 50 F.2d 872 (4th Cir. 1931), cert. den., Adams v. Keystone Credit Corp., 284 U.S. 684, 52 S.Ct. 201, 76 L.Ed. 578; Malone v. Gimpel, 151 F.Supp. 549 (N.D.N.Y. 1956), aff'd. 244 F.2d 954; Wilson v. Hundley, 96 Va. 96, 30 S.E. 492, 70 Am. St.Rep. 837; Jordan & Davis v. Annex Corp., 109 Va. 625, 64 S.E. 1050, 17 Ann. Cas. 267; Pretlow v. Pretlow, 177 Va. 524, 14 S.E.2d 381; 37 Am.Jur.2d page 432, ¶ 327, subject Fraud & Deceit; 8 Michie's Jur. page 724, ¶ 34, subject Fraud & Deceit; 17 C.J.S. Contracts, § 167, page 939. Ordinarily, one who after discovering the untruth of representations, conducts himself with reference to the transaction as though it were still subsisting and binding, thereby waives all benefits of and relief from the misrepresentations. R. A. Poff & Co. v. Ottaway, 191 Va. 779, 62 S.E.2d 865, 869; West End Real Estate Co. v. Claiborne, 97 Va. 734, 34 S.E. 900, 906; City of Reading v. Rae, 106 F.2d 458 (3d Cir. 1939), cert. denied 308 U.S. 607, 60 S.Ct. 145, 84 L.Ed. 508; Gallon v. Lloyd-Thomas Co., 264 F.2d 821, 825, 77 A.L.R.2d 417 (8th Cir. 1959); Bowie v. Sorrell, et al., 113 F.Supp. 373, 382 (W.D.Va.1963), reversed on other

grounds 209 F.2d 49, 43 A.L.R.2d 781 (4th Cir.); Northern Pacific Ry. Co. v. United States, 70 F.Supp. 836, 865 (D.C.Minn.1946), aff'd. 188 F.2d 277 (8th Cir. 1951); Lewis v. Mearns, 168 F.Supp. 134, 138 (N.D.W.Va.1958), aff'd. 268 F.2d 427; Lewis v. Kerns, 175 F.Supp. 115, 118 (S.D.Ind.1959).

In Grymes v. Sanders et al., 93 U.S. 55, at page 62, 23 L.Ed. 798, it is said:

> Where a party desires to rescind upon the ground of mistake of fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. These remarks are peculiarly applicable to speculative property like that here in question, which is liable to large and constant fluctuations in value. Thomas v. Bartow, 48 N.Y. [193] 200; Flint v. Wood, 9 Hare, 622; Jennings v. Broughton, 5 DeG.,M.&G. 139; Lloyd v. Brewster, 4 Paige, 537; Saratoga & S. R. R. Co. v. Rowe [Row], 24 Wend. 74; Minturn v. Main, 3 Seld. 220; 7 Rob.Prac., c. 25, sect. 2, p. 432; Campbell v. Fleming, 1 Ad. & El. 41; Sugd. Vend. (14th ed.) 335; Diman v. Providence, W. & B. R. R. Co., 5 R.I. 130.

In Security Underground Storage, Inc. v. Anderson, 347 F.2d 964 (10th Cir. 1965), at page 968, the Court said:

> The contracts being indivisible, Billue and the corporation must affirm or disaffirm it in its entirety. They may not disaffirm as to their contractual obligations and retain the benefits they have received. Wilhelm v. Consolidated Oil Corp., 10 Cir., 84 F.2d 739; Paskvan v. Mesich, 9 Cir., 227 F.2d 646, 16 Alaska 1; Lummus Co. v. Commonwealth Oil Ref. Co., 1 Cir., 280 F.2d 915, 91 A.L.R.2d 912, cert. denied 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225. If a party to a contract remains silent as to a claimed invalidity of a contract and continues to treat property as his own which was the subject of the contract, he will be deemed to have waived his objection and will be bound by the instrument. Morse v. Kogle, 162 Kan. 558, 178 P.2d 275; Lichter v. Goss, 7 Cir., 232 F.2d 715; Jack Mann Chevrolet Co. v. Associates Inv. Co., 6 Cir., 125 F.2d 778; American Mannex Corp. v. Huffstutler, 5 Cir., 329 F.2d 449.

Defendant continued to operate under the contract for a period of five years. It took no action to rescind the contract, or to repudiate or revoke it. It not only continued to operate under the contract, but paid the percentage of rent called for thereby, and attempted to negotiate an amendment. In all probability it did so hoping each year the traffic would increase. One entitled to relief can affirm or avoid the contract, but he cannot do both; if he adopts a part, he adopts it all. He must reject it entirely if he desires to obtain relief. Defendant cannot accept the benefits of the contract and then assert he is entitled to be relieved of its obligations. His action was a confirmation of the contract and a waiver of any alleged misrepresentation, mistake, fraud or other wrong. The time for him to demand relief is upon the discovery of the alleged misrepresentations. In Lewis v. Mearns, supra [168 F.Supp. 134], at page 138, the Court said:

> If any fraud has been shown, it is fraud in the procurement of the contract and not fraud in the factum, and under West Virginia law, does not render the contract void, but only voidable. Jones v. Comer, 123 W.Va. 129, 13 S.E.2d 578. That being the case, if he wished to avoid liability the defendant here was under a duty to disavow the contract upon first learning that he had been defrauded into accepting the written agreement with UMWA. Defendant has failed to disaffirm that contract, although put on notice by the various letters mentioned

above from officers of the Welfare and Retirement Fund. Section 483 of the Restatement of the Law of Contracts, subsection (1) states:

"The power of avoidance for fraud or misrepresentation is lost if after acquiring knowledge thereof the injured party unreasonably delays manifesting to the other party his intention to avoid the transaction."

In this case, not only has defendant waited an unreasonable time to disavow the contract but he has actually ratified the contract. Section 484 of the same Restatement sets forth the principle that:

"The power of avoidance for fraud or misrepresentation is lost if the injured party after acquiring knowledge of the fraud or misrepresentation manifests to the other party to the transaction an intention to affirm it, * * *."

And in the *Comment* under Section 484, the following appears: "Intention to affirm may be manifested not only by words but by other acts." The actions of defendant set forth previously regarding his conduct subsequent to the signing of the contract constitute a manifestation of affirmance of the written contract, and in addition there is other evidence of benefits accepted by defendant by pretending to be operating under the written contract.

■ Defendant's contention that by permitting jet aircraft to use Washington National Airport, the United States breached its contract with defendant, is not supported by the evidence. Neither the contract nor invitation to bidders contained any agreement or covenant that jet aircraft would not be permitted to use Washington National Airport. The reference in Plaintiff's Exhibit E, page 4, is but a relation of conditions as they then existed. Nowhere does the Exhibit assert that in the future jet aircraft will not be permitted at Washington National. In any event, two and three engine jet aircraft did not com-

mence using Washington National Airport until April, 1966. At that time the contract in question had run for more than three years of the five year term.

Defendant filed a counterclaim against the United States for $375,000.00, asserting that jurisdiction is ancillary to the jurisdiction of the Court over the main action. It says the claim is founded upon the Fifth Amendment to the Constitution of the United States, a contract with the plaintiff, and pursuant to Title 28, U.S.C.A. § 1346. The grounds for such claim are allegations that the invitation to bidders "indicated" that a certain number of persons would use Dulles Airport the first three years of the term of the proposed lease, and that "plaintiff prohibited and would continue to prohibit the use of Washington National Airport by jet transport aircraft." As pointed out earlier, neither the invitation to bidders nor the contract of lease made by any such assertion of a prohibition against jet aircraft using Washington National Airport in the future. Neither the pleadings nor the evidence establish a case of misrepresentation or negligence for which defendant is entitled to relief.

In its trial brief, defendant says it initially recognizes that under the decision of Thompson v. United States, 250 F.2d 43 (4th Cir. 1957), defendant's counterclaim is limted to $10,000.00 to the extent that said counterclaim is based on defendant's contract with plaintiff, but that the evidence, "may well show that the FAA's estimates were negligently made," in which case defendant would seek a right to amend its counterclaim "to assert a cause of action under the Federal Tort Claims Act, 28 U.S.C.A. 134 [1346]."

■ In its post trial brief, defendant says the government's "negligent acts resulted in severe loss to defendant;" that the government continued to make studies of air traffic after it prepared its invitation to bidders but "did not make these studies available to defendant," and did not inform defendant of their

existence; that its failure to provide defendant "with more up-to-date information bearing on the anticipated volume of traffic was negligence;" that such action lulled the defendant into a sense of false security; that had it known the government itself questioned the traffic figures, it would have made an "extensive independent investigation;" and that the failure of the government "to act was the proximate cause of defendant's losses." The difficulty is that these allegations are not supported by the evidence.

Defendant concedes that Title 28 U.S.C.A. § 2680(h) prevents recovery in this case for any misrepresentations.

■ Defendant says it is its "contention that the contract must be reformed to express the intent of the parties had they known the true facts," and that "then the Court should grant the defendant an affirmative recovery in contract for losses resulting from government acts such as an erroneous traffic estimate, granting jets the privilege of landing at National and misleading defendant to his detriment concerning readjustments of rentals." It appears that what defendant is asking is that the Court re-write the contract or write a new contract for the parties. It is clear the Court does not have the power to re-write the contract. The time when the Court could reform the contract has long passed.

■ Defendant says the Court should reform the contract to reflect the intention of the parties, and that the parties entered into a contract under a mistaken assumption of material facts. There is no doubt that courts have the power to correct a mistake, whether it be the mutual mistake of the parties, or the mistake of one of them occasioned by the fraud or culpable negligence of the other. A contract made under a mistake of a material fact is voidable. But mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes of

fact as entitle either party to relief. The language in Fix v. Craighill, 160 Va. 742, 169 S.E. 598, at page 603, seems to answer the issue here, namely:

Mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk are not such mistakes of fact as entitle either party to relief. 3 Williston on Contracts, § 1543; 2 Pomeroy on Equity (4th Ed.), § 855; 13 Corpus Juris, p. 376, and cases there cited; Perkins v. Gay, 3 Serg. & R. (Pa.) 327, 8 Am.Dec. 653; Denver & S. L. R. Co. v. Moffatt Tunnel, etc., Dist. (10 Cir.) 35 F.2d 365, affirmed by (C.C.A.) 45 F.2d 715.

It may be stated in summation that both parties believed, anticipated, and were even convinced that the traffic projections set forth in the invitation to bid would materialize. When they did not materialize for 1963, defendant should have taken action to rescind, revoke or otherwise terminate the contract.

The defendant contends that it relied in good faith upon the plaintiff's projections, which projections appeared to be reasonable and with an aura of certainty. In Centex Construction Co. v. James, supra [374 F.2d 921, 8th Cir. 1967], the Court said that one is entitled to relief where he "has demonstrated a good faith reliance upon the plans and specifications submitted to him."

While one can differentiate between a construction contract and a concession, assume for the moment that *Centex* is applicable to the case at hand. But note well that in *Centex*, when the aggrieved party determined that the projections in the invitation to bid were in error, it immediately stopped work and filed suit for rescission of the contract.

Whatever the defendant's contention may be—mistake, unilateral or bilateral; fraud; misrepresentation, innocent or knowingly; deceit; or whatever—if it had a cause of action by which it might obtain relief, it failed to pursue it. Whatever these contentions may be, one comes to the same conclusion no matter

what avenue of approach is used; it did nothing but live in the hope that air traffic would improve. Rescission cannot now be awarded for the defendant cannot restore the plaintiff to the status quo, nor can he return five years of time to the plaintiff.

The United States is entitled to a judgment for the rental contracted to be paid subject to credit for the sums heretofore paid. An appropriate judgment order may be prepared and submitted for entry.